IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | |
| v. | : | 3:21-CV-225 |
| | : | (JUDGE MARIANI) |
| Approximately $18,010.00 | : | |
| in U.S. Currency, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On February 8, 2021, the U.S. Government filed a Complaint for Forfeiture in Rem

(Doc. 1) for defendant property of approximately $18,010.00 in U.S. Currency.  The

Government thereafter served Notices of Complaint for Forfeiture on Michael Rinaldi,

Jessica Caldwell, and George Kokenyei (Docs. 4-6) pursuant to Rule G(4)(b) of the

Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions included

within the Federal Rules of Civil Procedure ("Supplemental Rules").  A Warrant for Arrest in

Rem was issued on February 17, 2021.  (Doc. 7).

The Government's Complaint alleges as a basis for forfeiture that:

The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(6)
and 18 U.S.C. § 981(a)(1)(C) because it constitutes 1) money, negotiable
instruments, securities and other things of value furnished and intended to be
furnished in exchange for a controlled substance in violation of the Controlled
Substances Act; 2) proceeds traceable to such an exchange; or 3) money,
negotiable instruments, and securities used and intended to be used to
facilitate a violation of the Controlled Substances Act.

(Doc. 1, ¶ 7).

Neither Caldwell nor Kokenyei responded to the Notices served by the Government. However, Rinaldi filed a Motion to Dismiss (Doc. 8) and "Verified Claim" (Doc. 9) on February 22, 2021.  Rinaldi's Motion argues that the Government is violating "the prohibition against double jeopardy and this litigation is vindictive and designed to harass Rinaldi and to confiscate his property when the government knows they have no legitimate interest in said property."  (Doc. 8, at 2-3).[1]  Rinaldi's Verified Claim asserts that he is "the sole owner of the $18,010 in U.S. Currency that the government is seeking to forfeit", that "no one else has any claim or any interest in the property", and that the money should be returned to him. (*See generally,* Doc. 9).

In response to Rinaldi's filings, the Government filed a Motion to Dismiss Claim (Doc. 11).  The Government requests therein that Rinaldi's verified claim, set forth in document 9, be stricken for lack of standing and that consideration of Rinaldi's motion to dismiss be stayed pending a determination as to Rinaldi's standing.  (*Id*.).

Following the Government's filing of its Motion to Dismiss and supporting brief (Docs. 11, 12), Rinaldi filed a second Motion to Dismiss (Doc. 16) on the basis that the

---

[1] With respect to Rinaldi's assertion that the present action "violates the prohibition against double jeopardy" where the issue of the forfeiture of this money was submitted to a jury in Rinaldi's criminal trial (Doc. 8, at 2, 3), this argument has been long rejected by the Supreme Court and is without merit.  *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984) ("clarify[ing] that neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges.").

"government's civil forfeiture claims should be dismissed for violating the statute of limitations."

For the reasons that follow, the Court will grant the Government's Motion to Dismiss Claim (Doc. 11) on the basis that Rinaldi lacks standing to challenge the civil forfeiture and will strike Rinaldi's Verified Claim and deny Rinaldi's Motions to Dismiss (Doc. 8, 16).

## II. PROCEDURAL HISTORY

For purposes of clarity, the Court begins with a brief background of the events related to the criminal cases involving Kokenyei, Caldwell, and Rinaldi.

On August 21, 2018, a federal Grand Jury charged Defendants Michael Rinaldi, Dwayne Romail Brown, and Andrew Henry with one count of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, cocaine and cocaine base, in violation of 21 U.S.C. §§ 841 and 846.  (*See* 3:18-cr-279, Doc. 37).  That same day, the federal grand jury also returned an indictment in another criminal action charging Defendants Michael Rinaldi, Steven Powell, Jessica Caldwell, and George Kokenyei with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, marijuana, in violation of 21 U.S.C. §§ 841 and 846.  (*See* 3:18-cr-280, Doc. 1).  The indictment in case number 3:18-cr-280 contained a forfeiture allegation including "$18,010 in U.S. currency, seized from defendant George Kokenyei on July 17, 2018".  (*See* 3:18-cr-280, Doc. 1).

On December 20, 2019, upon motion by the Government, the indictment against Defendants Kokenyei and Caldwell was dismissed without prejudice (*see* 3:18-cr-280, Docs. 203, 204), leaving only Rinaldi and Powell as Defendants in criminal case 3:18-cr-280.

Subsequently, on January 21, 2020, the Government filed a First Superseding Indictment in criminal case 3:18-cr-279, charging Rinaldi with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically cocaine, cocaine base, heroin, and marijuana, in violation of 21 U.S.C. §§ 841 and 846 and with Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841. (*See* 3:18-cr-279, Doc. 220). The Superseding Indictment included the following forfeiture allegation: "$18,010 in U.S. Currency, seized from a coconspirator on July 17, 2018, in the state of New York." (*See id.* at 5).

On August 26, 2020, following an eight-day jury trial in case number 3:18-cr-279, a jury returned a verdict finding Defendant Rinaldi guilty of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, specifically heroin (Count I), and guilty of Distribution and Possession with Intent to Distribute Cocaine (Count II). The jury did not find that the conspiracy alleged in Count I involved cocaine, cocaine base, or marijuana. The jury also found that the $18,010 was not subject to forfeiture in that case.[2]

---

[2] As a result of the trial held in criminal case number 3:20-cr-279, on May 6, 2021, upon motion by the Government, the indictment in criminal case 3:18-cr-280 was dismissed with prejudice. (*See* 3:18-cr-280, Doc. 275).

4

Thereafter, on February 8, 2021, the Government filed its civil "Complaint for Forfeiture *in Rem*" in the above-captioned action requesting that a warrant of arrest be issued for the defendant property, specifically "[a]pproximately $18,010.00 in U.S. Currency" which was "seized from George Kokenyei on July 17, 2018", and requesting that this property be forfeited to the United States (Doc. 1).

On April 21, 2023, the Third Circuit Court of Appeals affirmed Rinaldi's conviction and sentence. *United States v. Rinaldi*, 2023 WL 3034327 (3d Cir. 2023).

## III. ANALYSIS

At issue in the present civil action is the $18,010.00 in U.S. Currency which was undisputedly seized from Kokenyei on July 17, 2018 in Wallkill, New York by the New York State Police after a stop of Kokenyei's vehicle and consensual search of the vehicle. The Court further accepts as true, for purposes of deciding the issue of standing, that Rinaldi provided this money to Kokenyei during a meeting between the two men earlier that same day in or around Hawley, Pennsylvania.[3] As a result of Rinaldi's undisputed prior possession of the $18,010, he now claims that he is the "sole owner" of this money that is subject to the above-captioned forfeiture proceeding (*see* Doc. 9). In turn, the Government

_____

[3] In response to Interrogatory # 12 of the Government's Special Interrogatories to Claimant Michael Rinaldi (Doc. 14), specifically, that "On July 17, 2018, you traveled from Luzerne County, Pennsylvania, to the parking lot of a Sunoco gas station on State Route 739, located in Hawley, Pennsylvania", Rinaldi stated that "I travelled to Hawley to meet with George Kokenyei in order to deliver $ 18010 in U.S. Currency" (Doc. 18, at 4).

asserts that Rinaldi lacks standing to challenge the civil forfeiture and moves pursuant to

Supplemental Rule G(8)(c)(i)(B) to strike Rinaldi's claim. (Docs. 11, 12).

Pursuant to Supplemental Rule G(8)(c),

(i) At any time before trial, the government may move to strike a claim or
answer:
   (A) for failing to comply with Rule G(5) or (6), or
   (B) because the claimant lacks standing.
(ii) The motion:
   (A) must be decided before any motion by the claimant to dismiss the action;
   and
   (B) may be presented as a motion for judgment on the pleadings or as a
   motion to determine after a hearing or by summary judgment whether the
   claimant can carry the burden of establishing standing by a preponderance
   of the evidence.

Fed. R. Civ. P. Supp. G(8)(c).

As the Third Circuit has explained:

A forfeiture claimant must meet both Article III and statutory standing
requirements before it may stand before a court to contest a forfeiture. [*United
States v. Contents of Accts. Numbers 3034504504 & 144-07143 (In re Friko
Corp.),* 971 F.2d 974, 984 (3d Cir. 1992)]. "Article III standing requires the
claimant to show an interest in the property sufficient to create a 'case or
controversy,' while statutory standing requires claimants to comply with certain
procedures." *Id*. The statutory standing procedures with which a forfeiture
claimant must comply are set forth in Rule C(6) [governing responsive
pleadings and interrogatories], and involve the timely filing of a verified claim.
The purpose of statutory standing is to force claimants "to come forward as
quickly as possible after the initiation of forfeiture proceedings, so that the court
may hear all interested parties and resolve the dispute without delay," and to
minimize the danger of false claims by requiring claims to be verified or
solemnly affirmed. *United States v. Various Computers & Computer Equip.*, 82
F.3d 582, 585 (3d Cir.1996).

*United States v. $8,221,877.16 U.S. Currency*, 330 F.3d 141, 150 n.9 (3d Cir. 2003). *See also*, *United States v. $487,825.000 U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007), *as amended* (May 14, 2007). The person claiming an interest in the property bears the burden of establishing standing to intervene in the *in rem* action. *See United States v. $148,840.00 U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008) ("As the party seeking to intervene in an in rem forfeiture action, a claimant bears the burden of establishing his own constitutional standing at all stages in the litigation. At the pleading stage, a claimant satisfies this burden by alleging a sufficient interest in the seized property, such as an ownership interest, some type of lawful possessory interest, or a security interest.") (internal citations omitted); *United States v. $8,440,190.00 U.S. Currency*, 719 F.3d 49, 57-58 (1st Cir. 2013) ("In forfeiture cases, the property is the defendant and therefore defenses against forfeiture can only be brought by a third-party intervenor . . . who generally must have independent standing. When faced with a motion seeking to strike a claim, . . . the burden is on the party contesting the forfeiture (the claimant) to establish standing by a preponderance of the evidence. To have such standing, the claimant must start by demonstrating an ownership or possessory interest in the seized property. At the initial stages of intervention, the requirements are not arduous and typically any colorable claim on the defendant property suffices. . . An allegation of ownership, coupled with some evidence of ownership, is sufficient to establish constitutional standing to contest a forfeiture.") (internal citations and quotation marks omitted).

7

Although "Article III standing is commonly associated with an inquiry into injury-in-fact, causation, redressability and other prudential factors, *see, e.g., Warth v. Seldin,* 422 U.S. 490, 498–502, 95 S.Ct. 2197, 2204-07, 45 L.Ed.2d 343 (1975), . . . the inquiry is more focused in forfeiture cases.  Courts generally do not deny standing to a claimant who is either the colorable owner of the *res* or who has any colorable possessory interest in it." *United States v. Contents of Accts. Numbers 3034504504 & 144-07143 (In re Friko Corp.),* 971 F.2d 974, 985 (3d Cir. 1992).  However, the Third Circuit has explained that there is "little analytic difference between *Warth* 's approach and the owner-possessor approach in forfeiture cases.  An owner or possessor of property that has been seized necessarily suffers an injury that can be redressed, at least in part, by return of the seized property." *Id*. *See also, Munoz-Valencia v. United States*, 169 F.App'x 150, 151-152 (3d Cir. 2006) (to create a "case or controversy", claimant must demonstrate colorable ownership or possessory interest).

Furthermore,

> Unlike in typical civil proceedings, the government may commence limited discovery immediately after a verified claim is filed. Supplemental Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the court's leave at any time after the claim is filed and before discovery is closed."  The purpose of the rule is "to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)).

*United States v. $133,420.00 U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012).

Here, following the filing of Rinaldi's Verified Claim, the Government served Special

Interrogatories on Rinaldi pursuant to Supplemental Rules G(6)(a)(1) and 6(b) (Doc. 14), to

which Rinaldi responded (Doc. 18).  Of note are the following Special Interrogatories by the

Government and Rinaldi's responses thereto:

### Interrogatory # 2

State the extent and describe with particularity the nature of your interest in the defendant property and identify how you acquired that interest. Your answer should include, but not be limited to, the following:

a. The date(s), time, place, and manner in which the defendant property was obtained, including the names, addresses, and

telephone numbers of the person(s) from whom the defendant property was obtained;

b. the circumstances of each transaction by which you acquired or obtained any interest in the defendant property or any part thereof;

c. the reason(s) the defendant property was obtained, and an identification of all witnesses to any of the transactions by which the defendant property was obtained, including the names, addresses, and telephone numbers of such witnesses; and

d. an identification and description of each and every document evidencing, recording, facilitating, or otherwise relating to any transaction identified in response to Interrogatory No. 2 (a) through (c) above.

### Answer

I am the sole owner of the property and I acquired it through employment at AZEK in Scranton, employment at S.A. Sutton transport.  Witness Steven Powell.

Some was acquired through gambling at the Mohegan Sun Pocono. The documents verifying the dates & time can be subpoenaed because I do not remember any dates or times.

The government is already in possession of documents showing the amount of money I made working at Azek but nevertheless I will provide copies as soon as I obtain them.

(Doc. 14, at 9-10; Doc. 18, at 2).

**Interrogatory # 12**
On July 17, 2018, you traveled from Luzerne County, Pennsylvania, to the parking lot of a Sunoco gas station on State Route 739, located in Hawley, Pennsylvania. State the exact purpose of that travel and identify all individuals you met with in the parking lot of that Sunoco gas station and for what cause.

**Answer**
I travelled to Hawley to meet with George Kokenyei in order to deliver $18010.00 in U.S. Currency.

(Doc. 14, at 21; Doc. 18, at 4).

**Interrogatory # 13**
The defendant property was seized from a vehicle operated by George Kokenyei, in the state of New York, on July 17, 2018. George Kokenyei was the only occupant of the vehicle when the defendant property was seized. Explain why George Kokenyei was in possession of the defendant property on that date and in that place.

**Answer**
George Kokenyei was acting as a courier for Michael Rinaldi.

(Doc. 14, at 22; Doc. 18, at 4).

In the present case, Rinaldi has failed to establish Article III standing with respect to his claim to the $18,010.00 in U.S. Currency at issue. Although the Court recognizes that, at this stage of the forfeiture proceedings, the claimant faces a low burden to establish standing, Rinaldi has not shown, by even the most liberal legal standard, the existence of any colorable interest in the *in rem* property. *See e.g. United States v. U.S. Currency, $81,000.00*, 189 F.3d 28, 35 (1st Cir. 1999) ("'At this preliminary juncture . . . the claimant need not prove the full merits of her underlying claim. All that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy

requirement and prudential considerations defining and limiting the role of the court.'")
(quoting *United States v. 116 Emerson Street*, 942 F.2d 74, 78 (1st Cir. 1991)).

As previously stated, to prove standing, a claimant must show that he has "a
colorable ownership or possessory interest in the funds." *Mantilla v. United States*, 302
F.3d 182, 185 (3d Cir. 2002). *See also*, *Munoz-Valencia*, 169 F. App'x at 151-152 ("In the
administrative forfeiture context, we have found standing where the claimant shows
colorable ownership or colorable possession of the forfeited property. However, to find the
ownership or possessory interest colorable, we have generally required a showing that the
claimant independently exercised some dominion or control over the property.") (internal
citation omitted).

In *Mantilla v. United States*, Mantilla and his co-conspirators negotiated a deal with
undercover Customs agents, posing as drug smugglers, to transport large quantities of
drugs from Columbia to the U.S. in exchange for $9,000,000, of which $1,000,000 the
agents required to be paid "up front" prior to providing Mantilla and the co-conspirators with
any narcotics.  Thereafter, a co-conspirator drove a truck to an agreed upon meeting site,
parked the truck and handed Mantilla the keys to the truck.  Mantilla then handed the keys
to the agent.  Because the truck only contained $900,000, Mantilla and his co-conspirators
represented that they would deliver the missing $100,000 later that same day.  Later, two
co-conspirators traveled to deliver the remaining money, but were stopped by agents prior
to arriving at the meeting site.  The agents searched the vehicle and found approximately

$95,500.  Mantilla was subsequently arrested at the pre-arranged meeting site.  *Mantilla*, 302 F.3d at 183.

The Third Circuit "assume[d]" that Mantilla had standing to claim a possessory interest in the $ 900,000 because he "possess[ed] the funds at the time of transfer" to the undercover agent.  However, the Circuit concluded that Mantilla lacked standing to seek the return of the $ 95,500 where "Customs agents confiscated this amount from a vehicle that Mantilla did not own, possess, or occupy" and "Mantilla offer[ed] no evidence from which a reasonably trier of fact could discern his colorable interest in this amount."  *Mantilla*, 302 F.3d at 185.

Here, Rinaldi has not demonstrated a colorable interest in the currency at issue.  It is undisputed that the currency was found in a vehicle driven by George Kokenyei, with no other occupants in the vehicle, by the New York State Police after a stop of Kokenyei's vehicle and consensual search of the vehicle.  Rinaldi did not have possession of the currency at that time, had no ownership interest in the vehicle in which the money was found, and was not present at the time Kokenyei's vehicle was pulled over or the vehicle was searched.  *See Mantilla*, 302 F.3d at 185 (finding no colorable interest in $ 95,000 where Mantilla, despite participating in negotiations regarding the payment of the money and being present at the agreed-upon delivery location, was not the owner, possessor, or occupant of the car where this money was seized and was not present at the time/place of the seizure).  It is further undisputed that Rinaldi provided this money to Kokenyei during a

meeting between the two men earlier that same day in or around Hawley, Pennsylvania.

Thus, Rinaldi arguably had an ownership interest in the currency at some time *prior* to the

seizure of the currency.  However, Rinaldi's own responses to the Interrogatories make

clear that, at the time the money was seized by the New York Police, any ownership he

previously had in the money was no longer extant.  In response to the Government's

Interrogatories 12 and 13, Rinaldi avers that "I travelled to Hawley to meet with George

Kokenyei in order to deliver $ 18010.00 in U.S. Currency" and that Kokenyei was "acting as

a courier for Michael Rinaldi" (*id.*).  Rinaldi's statement that Kokenyei was a "courier" is

entirely consistent with the uncontroverted testimony at Rinaldi's criminal trial wherein

George Kokenyei testified that in July, 2018, he met with Rinaldi at a gas station in

Dingman's Ferry and that Rinaldi "put two bundles of money in the center console [of

Kokenyei's wife's car], and he left" (3:18-cr-279, Trial Tr., Aug. 20, 2020, at 15-16).  This

money consisted of the $18,010 at issue herein.  (*See id*. at 16).  According to Kokenyei,

the money placed in the console was money owed to Kokenyei's wife, Jessica Caldwell, for

past sales of marijuana to Rinaldi.  (*Id*. at 16-18).  Jessica Caldwell also testified that on July

17, 2018, Kokenyei went to meet Rinaldi to "pick up money" and "collect[] what was owed"

for marijuana previously provided by her to Rinaldi.  (3:18-cr-280, Aug. 19, 2020, at 190-

191).  Neither Rinaldi's Verified Statement, his responses to the Interrogatories, or any brief,

assert that the money given to Kokenyei was a loan from Rinaldi or set forth any other

expectation that this money, once admittedly "delivered" to Kokenyei, continued in any way

to be owned by Rinaldi or was otherwise due back to him.[4]  The undisputed facts, even when considering Rinaldi's bare self-serving assertions, demonstrate that Rinaldi relinquished both possession and ownership when he admittedly "delivered" the U.S. currency at issue to Kokenyei.[5]

In response to the Government's assertion that he lacks Article III standing, Rinaldi acknowledges that his "claim alone may not be sufficient to establish [the] standard [but t]his combined with the government's allegation of Rinaldi's involvement with the seized 'res' are sufficient to establish standing."  (Doc. 17) (citing *United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir. 1992)).  In *$38,570 U.S. Currency*, the Fifth Circuit found that a claimant had established standing, despite his bare assertion that "I own the currency", where the claimant was driving the vehicle containing the currency which was pulled over by DEA agents, was present at the scene of the seizure of the money, had an "alleged

---

[4] Consistent with this Court's reasoning, as explained by the Government in its Reply brief:

"While the owner of the defendant property has standing to contest its forfeiture, the former owner of the property does not. It makes no difference that the former owner can trace his interest to the property, or that he has not been compensated for the transfer. If the former owner did not retain a secured interest in the property, he has no grounds to intervene in a forfeiture action against it." Cassella, ASSET FORFEITURE LAW IN THE UNITED STATES 2e, § 10-5 (2013) (collecting cases). Rinaldi retained no secured interest in the seized property and has presented no evidence to refute that.

(Doc. 19, at 2-3).

[5] Rinaldi admits that he does not have a possessory interest in the currency but asserts an ownership interest.  (*See generally*, Doc. 21)  However, as explained herein, Rinaldi has set forth no evidence or argument to support any claim of ownership in the $18,010.

relationship" to the currency, and the Government's complaint "clearly specified that [claimant] exercised some form of dominion over the currency." 950 F.2d at 1110-1113. The Fifth Circuit's decision is inapposite.[6] As previously stated, Rinaldi was not driving the vehicle containing the currency, had no ownership of the vehicle, and was not present at the time of the seizure. Although he undisputedly had a *past* relationship with the currency, that relationship did not exist at the time of the money's seizure. The Government's Complaint here alleges that DEA investigators learned that Rinaldi intended to pay "his and Stephen Powell's marijuana source of supply approximately $ 18,500.00 in U.S. Currency" and that Rinaldi was later followed to a Sunoco gas station "where he was observed exiting his vehicle with a Louis Vuitton backpack and entering a gray Buick registered to Jessica Caldwell". (Doc. 1, ¶¶ 9, 10). Investigators surveilled the Buick and it was stopped by the New York State Police, at which time Kokenyei consented to the search of the vehicle which led to the seizure of the $18,010. (*Id*. at ¶ 11). The Government's Complaint thus only alleges dominion by Rinaldi over the currency remote in time and place from the money's seizure. Rather, the Government's Complaint clearly alleges that investigators followed Kokenyei after the meeting in Pennsylvania, that New York State Police pulled over Kokenyei, traveling in Caldwell's vehicle, and that the money "was seized from George

---

[6] In addition to the reasons set forth herein distinguishing the Fifth Circuit's decision in *$38,570 U.S. Currency* from the present action, this Court further notes that, as an opinion from outside the Third Circuit, *$38,570 U.S. Currency* is not binding on this Court and further that the Third Circuit does not appear to have considered or applied a similar reasoning in determining the Article III standing of a claimant in a forfeiture action.

Kokenyei on July 17, 2018, in Wallkill, New York". (*See generally, id.*) (underline added). *Cf. Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (holding that claimant's "unsupported assertion of ownership", even when coupled with affidavit of FBI agent who informed DEA that claimant might have been involved in placement of some of the currency at issue in the locker where it was seized, was insufficient to establish standing to contest forfeiture); *United States v. $29,550.00 in U.S. Currency*, 2006 WL 148992, at *3 (W.D. Mo. 2006) (where DEA seized currency as suspected drug proceeds from an RV in which claimant was not an occupant, Court explained: "Claimant has been unable to show by any means that he had an ownership interest in the currency that was found in the vehicle. Rather, he merely asserts that the money was obtained by him as proceeds from a real estate transaction. In the Court's view, this misses the point entirely. The inquiry is not how Claimant might have obtained the money initially. The primary inquiry is whether or not claimant was entitled to ownership of the currency at the time it was seized by the government wrapped in plastic, in the possession of multiple third parties, in a vehicle in which the Claimant was not an occupant.").

For these reasons, the Court will grant the Government's request to strike Rinaldi's Verified Claim for lack of Article III standing.

Although the Court will strike Rinaldi's claim on the basis that he lacks Article III standing, the Court nonetheless notes that, while a much closer question, Rinaldi does have statutory standing.

Statutory standing "is a threshold issue that determines whether a party is properly before the court." *$8,221,877.16 U.S. Currency*, 330 F.3d at 150 n.9. To establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in 18 U.S.C. § 983(a)(4)(A) and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *$487,825.000 U.S. Currency*, 484 F.3d at 664. Where a party lacks statutory standing, the proper response is to strike that person's claim. *$8,221,877.16 U.S. Currency*, 330 F.3d at 150 n.9.

Section 983 requires that:

In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint.

18 U.S.C. § 983(a)(4)(A).

Supplemental Rule G(5)(a), governing responsive pleadings, mandates:

(i) A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:
(A) identify the specific property claimed;
(B) identify the claimant and state the claimant's interest in the property;
(C) be signed by the claimant under penalty of perjury; and
(D) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D).

Fed. R. Civ. P. Supp. G(5)(a)(i).

Here, Rinaldi filed a Verified Claim stating in relevant part,

> 2) Michael Rinaldi is the sole owner of the $ 18,010 in U.S. Currency that the government is seeking to forfeit.
> 3) Michael Rinaldi contends that the government has no basis to seek its forfeiture.
> 4) No-one else has any claim or any interest in the property.
> 5) Michael Rinaldi contends that the property in question should be returned to him as he is the sole owner and the United States has no interest in the property in question.

(Doc. 9, ¶¶ 2-5).  Arguably missing from the Verified Claim is any statement of Rinaldi's interest in the property, as required by G(5)(a)(i)(B).  Courts within the Third Circuit have differed in their requirements as to the amount of information that a claimant must provide in a Verified Claim to meet the statutory requirements and the Third Circuit case law has provided little clarification.  *Compare United States v. $39,557.00, More or Less, in U.S. Currency*, 683 F.Supp.2d 335, 339 (D.N.J. 2010) ("With regard to the claim of ownership, there are competing views on the amount of information that is necessary to satisfy this requirement. Supplemental Rules G(5)(a)(i)(A) & (B) are silent as to the amount of information necessary to satisfy this obligation. Some courts have held that a simple claim of ownership will suffice. . .  However, the Third Circuit recently held that a purported verified claim was deficient because it 'contain[ed] no description of [potential claimant's] interest in the property, which Rule C(6) requires.' *U.S. v. $487,825.000 in U.S. Currency*, 484 F.3d, 662, 665 (3d Cir.2007).") *with United States v. $263,327.95,* 936 F.Supp.2d 468, 472-473 (D.N.J. 2013) (finding, in light of the facts of the case, claimant's statement that he had an interest in the property because he was the "sole owner" of the property to be

sufficient to establish statutory standing and explaining that "[t]he amount of information that is necessary to 'state the claimant's interest in the property' under Rule G(5)(a)(i)(B) is an open question of law in the Third Circuit. The Supplemental Rules do not contain any pleading standards for claims, and Rule G(5)(a)(i)(B) does not specify the extent to which a claim must describe the claimant's interest. The Third Circuit has not decided this issue. In *United States v. $487,825.000 in U.S. Currency,* 484 F.3d 662 (3d Cir.2007), the Third Circuit held that a claim was deficient because it 'contain[ed] no description of [the claimant's] interest in the property' at all, and instead 'merely denie[d] the allegations made by the government in its complaint.' *Id.* at 665. However, the Third Circuit did not discuss the amount of information that would be necessary to satisfy this requirement."). *See also*, *United States v. Real Prop. Known as 212 E. 47th St., Apt. 4E, New York, N.Y.*, 2017 WL 1496931, at *3 (D.N.J. 2017) ("Although the Third Circuit has emphasized that claimants must carefully adhere to the procedural requirements for filing a claim, it has also cautioned against overly-rigid application of the rules when assessing standing. Consequently, we are mindful that our analysis of a claimant's compliance with procedural requirements 'should not be so strict in interpreting those requirements that the outcome defies "'old-fashioned common sense.'" *See United States v. $263,327.95*, 936 F. Supp. 2d 468, 472 (D.N.J. 2013) (quoting *United States v. Various Computers & Computer Equip.*, 82 F.3d 582, 585 (3d Cir. 1996)). Indeed, to assert statutory standing, the 'burden is minimal and does not require that defendants explain in any detail the nature of their interest.' *United States v.*

*$410,000.00 In U.S. Currency*, No. 07-0598, 2007 WL 4557647, at *5 (D.N.J. Dec. 21, 2007)").

Here, Rinaldi undisputedly filed a timely Verified Claim, stated that he "is the sole owner of the $ 18,010 in U.S. Currency", and verified this claim under penalty of perjury. In light of the lack of clear precedent by the Third Circuit explaining the requirements as to the amount of information necessary to state an interest in the property sufficient to confer statutory standing, and the conflicting District Courts' interpretations of the Third Circuit's decisions touching on this issue, this Court finds that Rinaldi's compliance with the other statutory requirements, his general assertion of an ownership interest, and the relevant case law of the Third Circuit weigh in favor of a finding that Rinaldi has statutory standing to contest the forfeiture.

Nonetheless, even assuming that Rinaldi's Verified Claim is sufficient to confer statutory standing, he must still make a *prima facie* showing that he has Article III standing, which he has failed to do for the reasons set forth in this Memorandum Opinion. *See In re Friko Corp.),* 971 F.2d 984 ("In forfeiture, as elsewhere, we must distinguish between standing conferred by statute and the standing requirements of Article III to the Constitution. Article III standing requires the claimant to show an interest in the property sufficient to create a 'case or controversy,' while statutory standing requires claimants to comply with certain procedures.").  Therefore, Rinaldi's Verified Claim will be stricken.

## IV. CONCLUSION

For the reasons set forth herein, the Court will strike Rinaldi's Verified Claim (Doc. 9) and grant the Government's Motion to Dismiss Claim (Doc. 11).  Because standing is a threshold issue, and only a claimant who has established standing to contest forfeiture may move to dismiss the forfeiture action under Federal Rule of Civil Procedure 12(b), *see* Fed. R. Civ. P. Supp. G(8)(b), Rinaldi's Motions to Dismiss (Docs. 8, 16) will be denied.  A separate Order follows.

Robert D. Mariani
United States District Judge